UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HERMITAGE INSURANCE COMPANY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:07-cv-551 (VLB) |
| SPORTSMEN'S ATHLETIC CLUB, et al., | : | |
|     Defendant. | : | August 25, 2008 |

### MEMORANDUM OF DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. #23]

The plaintiff, Hermitage Insurance Company ("Hermitage"), brought this declaratory judgment action against the defendants, Sportsmen's Athletic Club ("Sportsmen's"), Joseph Ellis, Xavier Cluff, Jermaine Floyd, and Carolyn Dubose Moody and Delaida Rosario as co-administratrixes of the estate of Joseph Howard Dubose, regarding the rights and obligations under an insurance policy. On February 29, 2008, Hermitage filed a motion for summary judgment that is now pending before the court. For the reasons hereinafter set forth, the motion for summary judgment is GRANTED.

### I. Facts

The following facts are undisputed. Hermitage issued a Commercial General Liability insurance policy ("policy") to Sportsmen's, a nightclub, effective June 25, 1999, through June 25, 2000. [Doc. #25-2] On November 14, 1999, an unidentified patron of Sportsmen's ("John Doe") fired a handgun at Ellis inside the nightclub. Doe's gunshots hit Ellis, Cluff, Floyd, and Dubose, also patrons of

1

the nightclub. The shooting incident left Ellis, Cluff, and Floyd injured, and killed Dubose. Sportsmen's notified Hermitage of the shooting incident on November 17, 1999. After an investigation, Hermitage disclaimed coverage under the policy on December 9, 1999.

On December 7, 1999, Carolyn Dubose Moody and Delaida Rosario filed suit against Sportsmen's as co-administratrixes of Dubose's estate (the "Moody complaint") in Connecticut Superior Court. [Doc. #25-6] The Moody complaint alleged wrongful death and emotional distress as a result of Sportsmen's negligence. On December 15, 1999, Cluff and Floyd brought a second suit against Sportsmen's (the "Cluff/Floyd complaint"). [Doc. #25-7] In addition to claims similar to those in the Moody complaint, the Cluff/Floyd complaint also alleged their injuries were caused by Sportsmen's violation of the Connecticut Department of Liquor Control's regulations, including but not limited to Sections 30-6-A24, et seq., and Sections 30-6-B40, et seq. On January 8, 2001, Ellis brought a third suit against Sportsmen's (the "Ellis complaint"). [Doc. #25-8] The Ellis complaint alleged Sportsmen's was negligent in failing to warn Ellis of the danger posed by the nightclub's history of violent incidents, and also asserted Sportsmen's violation of the Connecticut Department of Liquor Control's regulations.

The three Superior Court complaints were consolidated. The court entered judgment against Sportsmen's on April 2, 2007, awarding Moody $1,800,000, Ellis $600,000, Cluff $250,000, and Floyd $40,000. Hermitage did not defend

Sportsmen's in Superior Court because it had disclaimed coverage under the policy.  Following the judgment entered against Sportsmen's, Hermitage brought this action against Sportsmen's, Ellis, Cluff, Floyd, Moody, and Rosario, on April 9, 2007.  [Doc. #1]  Hermitage's complaint seeks a declaratory judgment that the shooting incident was not covered by the policy, it had no duty to defend Sportsmen's in the underlying suits, and no duty to indemnify Sportsmen's for the losses incurred as a result of those suits.  At the close of discovery, Hermitage filed the instant motion for summary judgment.  [Doc. #23]

## II.  Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits

3

or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." <u>Huminski v. Corsones</u>, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." <u>Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH</u>, 446 F.3d 313, 315 (2d Cir. 2006).

### III. Discussion

Hermitage's motion for summary judgment advances three theories based on the clear language of the policy. First, it contends that the shooting incident

was not an "occurrence" as defined by the policy and therefore not covered by the policy's terms.  Second, it claims that the shooting incident falls within the policy's assault and/or battery exclusion.  Finally, Hermitage claims that the policy's liquor liability exclusion precludes any claims based on violations of Connecticut's liquor control laws.

### A.  "Occurrence" Under the Policy

The interpretation of an insurance policy raises a question of law.  See Yale University v. Cigna Ins. Co., 224 F. Supp. 2d 402, 406 (D. Conn. 2002) (citing Aetna Life & Cas. Co. v. Bulaong, 218 Conn. 51, 58 (Conn. 1991)).  Moreover, "under Connecticut law, the terms of an insurance policy are to be construed according to the general rules of contract construction.  The determinative question is the intent of the parties . . . as disclosed by the provisions of the policy." Id. at 405-06 (quoting Heyman Assocs. No. 1 v. Insurance Co. of the State of Pa., 231 Conn. 756, 770 (Conn. 1995)).  If a policy's provisions are clear and unambiguous, then the language must be accorded its natural and ordinary meaning.  Id. at 406 (citing Heyman, 231 Conn. at 770-71). "There is no presumption that language in insurance contracts is inherently ambiguous." Buell Industries v. Greater New York Mutual Ins., 259 Conn. 527, 545 (Conn. 2002).

In this case, the allegations in the underlying complaints do not allege facts that fall within the policy's coverage if proven.  The policy only provides coverage for a bodily injury caused by an "occurrence." [Doc. #25-2, Sec. I, 1(b)(1)]  The policy defines an "occurrence" as an "accident, including

5

continuous or repeated exposure to substantially the same general harmful conditions." [Doc. 25-2, Sec. V, 12] The policy does not define the term "accident."

Under Connecticut law, "an accident is an unintended occurrence." Hammer v. Lumbermen's Mut. Cas. Co., 214 Conn. 573, 590 (Conn. 1990); see also Commercial Contractors Corp. v. American Ins. Co., 152 Conn. 31, 42 (Conn. 1964) ("the term 'accident' is to be construed in its ordinary meaning of an 'unexpected happening' . . . the 'accident' was the event causing injury, not the cause of that event."); Buell, 259 Conn. at 541 (defining "accidental" to mean unexpected or unintended). An "accident" has been further defined as a "sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing an unfortunate result." Stach v. Farm Family Cas. Ins. Co., 2002 Conn. Super. LEXIS 1174, *15 (Conn. Super. Apr. 9, 2002).

The Connecticut Supreme Court has held that the last event in the causal chain is what should be examined in order to determine whether an "occurrence" has been alleged. Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 255 Conn. 295, 312 (Conn. 2001). In Metropolitan Life Insurance Company v. Aetna Casualty and Surety Company, the court held that the actual event causing the injury is what must be analyzed to determine if the event was an "occurrence" under the policy, and not some point further back in the causal chain. Id. The court should focus only on the actual shooting incident to determine if there is coverage, as

the shooting incident was the actual event that caused the injuries. The underlying negligence claims against Sportsmen's are not relevant here since they were not the actual event that caused the injuries.

It is evident that the shooting by John Doe was intentional. There are no allegations that Doe accidentally or unintentionally fired his gun. The shooting incident was the direct cause of the injuries at issue in the underlying complaints. The shooting was not an accident, and therefore not an occurrence under the policy.

Connecticut recognizes the doctrine of "transferred intent." <u>Alteiri v. Colasso</u>, 168 Conn. 329, 335 (Conn. 1975); <u>Proto v. Hermitage Ins. Co.</u>, 2005 Conn. Super. LEXIS 1828 (Conn. Super. Jul. 1, 2005). The doctrine has also been recognized in the context of an assault and battery where the actor intends an assault, but causes injury to an unintended victim. <u>Alteiri</u>, 168 Conn. at 335; <u>Sansone v. Bechtel</u>, 180 Conn. 96, 99 (Conn. 1980). It is not necessary that the "precise injury which was done be the one intended. An act designed to cause bodily injury to a particular person is actionable as a battery not only by the person intended by the actor to be injured but also by another who is in fact so injured." <u>Alteiri</u>, 168 Conn. at 334. "Intent is not . . . limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act . . . he is treated by the law as if he had in fact desired to produce the result." <u>Polmatier v. Russ</u>, 206 Conn. 229, 240 (Conn. 1988). The doctrine of transferred intent applies to both criminal and civil

7

cases. Alteiri, 168 Conn. at 335 n.4.

The doctrine of transferred intent renders all the injuries caused by the shooting incident intentional because they stem from an intentional shooting. Since the November 14, 1999, shooting incident was intentional, all injuries caused by the shooting are not accidental because of transferred intent. As no "accident" took place, no "occurrence" took place either, and the policy does not cover the shooting incident.

Contrary to the defendants' claims, there is no genuine dispute as to the intent of the parties regarding the scope and terms of the policy. Sportsmen's asserts that it intended broader policy coverage, that the policy and its terms are misleading, and that the policy is difficult to understand. It claims that there is a dispute as to the parties' intent. The defendants cite to no facts in support of this argument other than the policy's page length. The defendants' arguments here are weak and unconvincing. The language of an insurance policy does not become ambiguous simply because the parties contend for different meanings. R.T. Vanderbilt Co. v. Cont'l Cas. Co., 273 Conn. 448, 462-63 (Conn. 2005); Yale, 224 F. Supp. 2d at 405-06 ("under Connecticut law, the terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties . . . as disclosed by the provisions of the policy."). It has bee that the "general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to

8

read it and notice of its contents will be imputed to him if he negligently fails to do so." Ursini v. Goldman, 118 Conn. 554, 562 (Conn. 1934). The policy language here is clear and unambiguous. Sportsmen's is bound by the policy terms, provisions, and exclusions.

The policy's coverage only becomes effective for injury caused by an "occurrence." The policy defines an "occurrence" as an "accident." Since the shooting incident is the event causing injury and the shooting was intentional and not an accident the policy does not cover the shooting incident.

### B. Assault and/or Battery Exclusion

Even if the November 14, 1999, shooting incident fell within the policy's coverage, the policy's assault and/or battery exclusion applies and excludes coverage. As with the body of an insurance contract, the words comprising a contract exclusion must be accorded their natural and ordinary meaning. Kelly v. Figueiredo, 223 Conn. 31, 35 (1992). If a claim against the insured falls within the policy's coverage, then a policy exclusion will relieve an insurer of the duty to defend for claims falling within the exclusion. See Id. at 37.

The assault and/or battery exclusion provides that an assault and/or battery "shall not be deemed an accident" and excludes coverage for any bodily injury "arising or alleged to arise out of:

    A.    An assault and/or battery caused by or at the instigation or direction of:

        1.    the insured, his agent or employee;

9

> 2. any patron of the insured; or
>
> 3. any other person;

[Doc. #25-2, HIC 308 (3/92)]

The exclusion further states that the "Company shall not be obligated to pay on behalf of or defend the insured for any claim alleging an assault and/or battery no matter how the assault and/or battery is alleged to have occurred."

Any and all liability asserted against Sportsmen's in the underlying complaints arises from an assault and/or battery and are excluded from coverage under the policy. The term "arising out of" is construed broadly under Connecticut law. For an accident to "arise out of" a particular event, "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to'" the particular event. <u>Bd. of Educ. v. St. Paul Fire & Marine</u>, 261 Conn. 37, 48 (Conn. 2002). Disguising claims arising out of an assault and/or battery as claims of negligence does not defeat the exclusion. See <u>Id.</u> While the underlying complaints may be cloaked in negligence, they indisputably arise out of the assault and/or battery, namely the shooting incident.

As previously discussed, Connecticut recognizes the doctrine of transferred intent. <u>Alteiri</u>, 168 Conn. at 335. As the shooting incident arose out of the intentional assault by Doe on Ellis, the assault and/or battery exclusion applies equally to the injuries suffered by the other victims.

The defendants argue that Hermitage is bound by the language of the

10

Superior Court complaints because it failed to defend Sportsmen's in those proceedings. As those complaints speak in negligence, any attempts by Hermitage to transform the negligence claims into an assault and/or battery would be impermissible because it would require facts outside the record of the Superior Court proceedings. They cite to no legal authority on point for this proposition. This case is a wholly different proceeding than that in Superior Court. Hermitage is in no way bound by the language of the Superior Court complaints. Discovery commenced in this case and all parties participated. The facts asserted in support of the motion for summary judgment are not in dispute. The defendants exercised their rights to discovery and defend themselves in this case. If they feel what occurred was not an assault and/or battery, they should have produced facts to support such a proposition. The facts asserted in the Superior Court complaints do state a claim for assault and/or battery by Doe, regardless of the defendants' use of the term negligence.

The assault and/or battery exclusion applies and excludes all coverage for the underlying claims even if the shooting incident and related injuries are assumed to fall within the policy's coverage.

### C. Liquor Liability Exclusion

The policy's liquor liability exclusion additionally bars coverage for any and all claims premised upon violations of the regulations of the Connecticut Department of Liquor Control. The policy's "Amendment of Liquor Liability Exclusion" excludes bodily injury and property damage claims based on "[a]ny

11

statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." [Doc. #25-2, CL 564 (9-89)] Any and all claims based on violations of Connecticut's Liquor Control Act and or the regulations of the Connecticut Department of Liquor Control are excluded from coverage. See <u>Jones v. Penn-America Ins. Co.</u>, 2003 Conn. Super. LEXIS 3161 (Conn. Super. Nov. 10, 2003).

## IV. Conclusion

Based on the above reasoning, the motion for summary judgment is GRANTED. The shooting incident is not an "occurrence" as defined by the policy and not within the policy's coverage. Additionally, the policy's assault and/or battery exclusion applies, and precludes coverage. Finally, the policy's liquor liability exclusion bars any claims based on Sportsmen's violation of Connecticut's liquor control laws.

The clerk shall terminate this action.

IT IS SO ORDERED.

/s/

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 25, 2008.